## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

2022 APR 14 P 2: 58

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| **HEATHER GIDEON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CASE NO.:** |
| | ) 3:22-cv-176 |
| | ) **JURY TRIAL REQUESTED** |
| **AUBURN UNIVERSITY;** | ) |
| | ) |
| **DR. TAJUAN SELLARS,** | ) |
| **ADMISSIONS COORDINATOR** | ) |
| **OF THE COLLEGE OF** | ) |
| **VETERINARY MEDICINE** | ) |
| **OF AUBURN UNIVERSITY, IN** | ) |
| **HIS OFFICIAL AND** | ) |
| **INDIVIDUAL CAPACITIES;** | ) |
| | ) |
| **DR. MELINDA CAMUS,** | ) |
| **ASSOCIATE DEAN OF THE** | ) |
| **COLLEGE OF VETERINARY** | ) |
| **MEDICINE OF AUBURN** | ) |
| **UNIVERSITY, IN HER** | ) |
| **INDIVIDUAL AND OFFICIAL** | ) |
| **CAPACITIES,** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

**COMES NOW** the Plaintiff, Heather Gideon, by and through her undersigned counsel, Julian L. McPhillips, Jr., and K. David Sawyer, and hereby files the Plaintiff's Complaint against the above-named Defendants, Auburn University, Dr. Tajuan Sellars, Admissions Coordinator of the College of

1

Veterinary Medicine in his official and individual capacities, while acting under color of state law, while engaged in race discrimination in employment in violation of 42 U.S.C. § 1981, and while also engaged in age discrimination in violation of 29 U.S.C. § 621 et seq., and Dr. Melinda Camus, Associate Dean of the College of Veterinary Medicine in her official and individual capacities, while acting under color of state law, while engaged in race discrimination in employment in violation of 42 U.S.C. § 1981, and while also engaged in age discrimination in violation of 29 U.S.C. § 621 et seq., and in violation of the due process clause of the 14th Amendment as set forth herein-below.

## I. JURISDICTION & VENUE

1.      Plaintiff Heather Gideon files this Complaint, institutes these proceedings, and invokes the jurisdiction of this Court under and by virtue of 28 U.S.C. §§ 1331 and 1367(a), as an action arising under the act of Congress known as the Age Discrimination in Employment Act (29 U.S.C. § 621 et. seq.), and for wrongful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000e-3(a) et seq.) to obtain equitable relief, the cost of suit, including reasonable attorneys' fees, and awards of back pay and damages suffered by the Plaintiff, caused by the Defendants' discrimination against Plaintiff, due to her age and due to the wrongful retaliation against her. A race discrimination claim is also raised under 42 U.S.C. § 1981, but through 42 U.S.C. § 1983 against Defendants Dr. Tajuan Sellars and Dr. Melinda Camus in their

official and individual capacities, for acting under color of state law in engaging in race discrimination in violation of 42 U.S.C. § 1981, and an age discrimination claim against them, in violation of 29 U.S.C. § 621 et seq., and in due process clause of the 14th Amendment.

2.     Plaintiff Gideon filed a charge of age discrimination against Auburn University with the EEOC in Birmingham, Alabama on August 12, 2021, due to the illegal actions of its College of Veterinary Medicine. Plaintiff received a right-to-sue from the EEOC on or about January 28, 2022, giving Plaintiff the right to pursue this claim in federal court for 90 days after said receipt. (Exhibit A). Plaintiff does not pursue her race discrimination complaint under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3(a) et seq.) but under 42 U.S.C. § 1981, for which there is no requirement that an EEOC charge is filed first.

3.     Venue is proper in the Eastern Division of the Middle District of Alabama since the alleged discriminating action of Defendant occurred in Lee County, Alabama.

## II. PARTIES

4.     The named Plaintiff, Heather Gideon (hereinafter "Plaintiff" or "Ms. Gideon") is a citizen of the United States and a resident of Lee County, Alabama. Plaintiff is over the age of nineteen years and of sound mind and body.

5.     (a)     The Defendant, Auburn University – College of Veterinary Medicine (hereinafter "Defendant" or "Auburn"), is a state university located in

Lee County, Alabama. At all times relevant to this complaint, Plaintiff was employed by the Defendant.

5.     (b)    The Defendant Dr. Tajuan Sellars, Admissions Coordinator of the College of Veterinary Medicine (hereinafter "Defendant" or "Dr. Tajuan Sellars"), is named in his official and individual capacities, while acting under color of state law, and engaged in race discrimination in employment in violation of 42 U.S.C. § 1981, and age discrimination, in violation of 29 U.S.C. § 621 et seq.

5.     (c)    The Defendant Dr. Melinda Camus Associate Dean of Academic Affairs of the College of Veterinary Medicine (hereinafter "Defendant" or "Dr. Melinda Camus"), is named in her official and individual capacities, acting under color of state law, while engaged in race discrimination in employment in violation of 42 U.S.C. § 1981, and age discrimination in violation of 29 U.S.C. § 621 et seq. She is also named in her official capacity, acting under color of state law, for violating Plaintiff's Fourteenth Amendment right to due process.

### III. STATEMENT OF FACTS

6.     The Plaintiff, Heather Gideon is fifty-three (53) years old.

7.     . After graduating from high school in 1986, Ms. Gideon served in the U.S. Navy from 1987 to 1993 as an enlisted electronics technician. Ms. Gideon received an honorable discharge in 1993 and is a veteran of Operations Desert Shield and Desert Storm.

4

8.     Ms. Gideon first attended college for 2 years at the Community College of Allegheny County, located in Pittsburgh, Pennsylvania. Her primary field of study was foreign languages, and she obtained an Associate of Arts degree in 1995.

9.     Ms. Gideon later enrolled at Geneva College in Beaver Falls, Pennsylvania, and obtained a Bachelor of Arts degree in Biblical Languages in 2005. That same year, Ms. Gideon moved to San Diego, California to pursue a master's degree at Westminster Seminary California, which degree she obtained in 2008.

10.     While in California, Ms. Gideon served as Westminster Seminary's Admissions Coordinator and Financial Aid Coordinator and then became Registrar and Dean of Women Students for 5 years. She brought a great wealth of valuable experience in the military and in higher education and the military to her position at the College of Veterinary Medicine at Auburn University.

11.     In April 2014, Auburn hired Ms. Gideon to serve in its Office of Academic Affairs at the College of Veterinary Medicine. Ms. Gideon began as a temporary employee and assisted the then Associate Dean for Academic Affairs Dr. Daniel Givens, with his calendar and email. She also worked as the College's Admissions Coordinator, processing applications and prospective student

questions, and began working on reporting for the annual curriculum review. She also assisted with other tasks in the office.

12.     In September 2014, Auburn University hired Ms. Gideon to be full-time Coordinator of Student Services for the College of Veterinary Medicine Office of Academic Affairs. Her responsibilities covered many areas, including (a) managing the program's assessment process; (b) producing various reports for the Associate Dean, department heads, and the College of Veterinary Medicine Dean's office; (c) providing technical support, including primary administrator of the office's clinical scheduling software, web page updates, and assisting students and faculty with a variety of software applications; (d) exam proctoring for various students; (e) and acting as the contact for outside agencies requiring information regarding students or providing the College of Veterinary Medicine with licensing exam data.

13.     While in this position, Ms. Gideon consistently received exemplary yearly performance reviews and was promoted to the top of her job classification. In 2018, Ms. Gideon received a Staff Recognition Award.

14.     Nonetheless, from 2016 through 2021, Ms. Gideon witnessed and was subjected to an obvious pattern and practice of age discrimination at the College of Veterinary Medicine.

15.     During this period, the College of Veterinary Medicine routinely hired younger employees at starting salaries higher than the normal entry-level pay.

16.     This practice also occurred in the Office of Academic Affairs, although the younger employees' past experience in higher education roles was very limited or often non-existent.

17.     In addition, although members of the Office of Academic Affairs were required or expected to take part in after-hours events such as the yearly White Coat Ceremony, the younger employees hired in 2016 were allowed to opt-out of these events.

18.     Dr. Givens left Auburn University in March 2020. He was replaced as the Associate Dean in the Office of Academic Affairs by Dr. Melinda Camus in December 2020. Mr. (later Dr.) Tajuan Sellars was hired as an admissions coordinator in the Office of Academic Affairs in September 2016. From 2017 through Plaintiff's termination in March 2021, Dr. Sellars and other recently hired staff members in the Office of Academic Affairs often made comments in front of management to the effect that "older employees were unwilling to change and needed to go."

19.     Dr. Sellars also asserted to management that "younger people were more in tune with what needed to be done, while older people were "set in their ways" and "unwilling to change".

20.    During this same time, younger staff members routinely ignored and did not communicate with Ms. Gideon and openly treated the older staff members with contempt. Ms. Gideon and other older staff members repeatedly reported this to senior management, including Dr. Daniel Givens and Dr. Melinda Camus, the former and current Associate Dean for Academic Affairs respectively. However, no corrective action was taken by senior management. Instead, the older staff members were encouraged to ignore the derogatory comments and behavior by younger staff members, including Dr. Sellars, and to "try to work with" them as a team. The lack of corrective action by the college can be ascribed in large part to the influence of Dr. Sellars, which is more fully described hereinafter.

21.    On the afternoon of March 4, 2021, Ms. Gideon stopped by Ms. Jerri Turnbough's desk in the public area of the office suite to let Ms. Turnbough know that she (Ms. Gideon) had completed a meeting and could resume video proctoring any students taking exams. Ms. Gideon was unaware that the student(s) had finished the exam(s).

22.    At the same time, Ms. Gideon was unaware that the exam proctoring video at Ms. Turnbough's workstation reflected anything other than student exams or that one of the video windows on Ms. Turnbough's computer was showing a confidential meeting. Upon noticing three people in one of the proctored rooms,

Ms. Gideon and Ms. Turnbough took note of who was in the room because other rooms were occupied with students taking the examination.

23.     Nonetheless, on March 5, 2021, and without notice, Dr. Melinda Camus, with misinformation and biased input from Mr. Sellars, placed Ms. Gideon on administrative leave for allegedly watching a confidential meeting that appeared on an exam proctoring video screen on Ms. Turnbough's computer in the public office area.

24.     Twelve days later, on March 17, 2021, the HR Manager of the College of Veterinary Medicine, Ms. Nichole Diehl, with input and directions from Dr. Melinda Camus, acting under the influence and persuasion of Dr. Sellars and under the color of state law, notified Ms. Gideon by e-mail that she had been terminated for allegedly watching a confidential meeting that appeared on an exam proctoring video screen. The truth is that Ms. Gideon was terminated on pretextual grounds and for age- and race-related reasons.

25.     In that same March 2021, Auburn's College of Veterinary Medicine terminated the two other female employees over the age of 50 in the Office of Academic Affairs, using erroneous and unsupported information as false pretexts.

**Due Process Deprivation**

26.     Following her termination, Ms. Gideon worked through channels at Auburn University to contest her administrative leave and termination. This

included consultations with the university's ombudsperson, Mr. Kevin Coonrod; a meeting with the Dean of the College of Veterinary Medicine, Dr. Calvin Johnson, at Ralph Brown Draughon Library on March 24, 2021; and a meeting with Auburn University Executive Vice President Lt. Gen. (Ret.) Ron Burgess at Samford Hall on April 30, 2021.

27.    Ms. Gideon also requested a grievance hearing before the Auburn University Administrative and Professional (A&P) Employees Grievance Committee. The committee initially denied Ms. Gideon's request for a grievance hearing, citing procedural reasons. The denial was eventually reversed on appeal by Ms. Gideon and after the apparent intervention of Gen. Burgess. The grievance hearing finally took place on June 23, 2021—more than three months after Ms. Gideon was terminated and almost two months after her initial request for a hearing.

28.    At the grievance hearing on June 23, 2021, Dr. Melinda Camus disclosed for the first time to Ms. Gideon that Ms. Gideon's termination was based on alleged statements provided by an unidentified "witness". It was clear from Dr. Camus' statements at the hearing that the "witness" was Mr. Tajuan Sellars. It was also clear from Dr. Camus' statements that the word "witness" was a misnomer. Dr. Camus stated that the "witness" was located in an "adjoining office" and later that there was no third person in the room with Ms. Gideon and Ms. Turnbough;

therefore, he could not have "witnessed" the events in the public office area. The unavoidable conclusion is that he eavesdropped on Ms. Gideon and Ms. Turnbough. Dr. Camus also disclosed that she played a role in the attempt to deny Ms. Gideon a hearing before the A&P Grievance Committee. Finally, near the end of the hearing, Dr. Camus admitted that her decision to hold a confidential meeting in a room that was under continuous video surveillance was a mistake. Nevertheless, she shifted the blame for her mistake to Ms. Gideon and explicitly impugned Ms. Gideon's professionalism, integrity, and character.

29.     The Grievance hearing was deliberately restricted by the A&P Grievance Committee to narrow (but unspecified) procedural issues. This restriction prevented Ms. Gideon from effectively following up on Dr. Camus' disclosures and presenting relevant circumstances fundamental to revealing the pretextual basis for her termination. At the same time, the A&P Grievance Committee denied Ms. Gideon's request for a witness, Mr. Aaron Trehub, who could speak to the procedural irregularities in her case based on his long experience as an administrator with the Auburn University Libraries. The Grievance Committee based its denial of Ms. Gideon's request on the grounds that Mr. Trehub did not witness the events in question and was not present at Ms. Gideon's termination (in fact, nobody was "present" at Ms. Gideon's termination—Ms. Gideon received her termination letter remotely, by e-mail).

Instead, the Grievance Committee allowed the participation of Ms. Jerri Turnbough as a witness for Ms. Gideon, even though Ms. Turnbough was not allowed to give an eyewitness account of the events in the office on the date in question, was not "present" at Ms. Gideon's termination, and could not speak to the procedural irregularities surrounding Ms. Gideon's termination.

30.    The transcript of the hearing shows that when Ms. Gideon attempted to raise appropriate substantive and procedural issues helpful to her defense, she was abruptly cut off or interrupted by the chair of the A&P Grievance Committee, Ms. Robyn Westbrook. Indeed, the hearing was so narrowly structured that it took on the appearance of a purely *pro forma* exercise, one deliberately designed to prevent critical scrutiny of the circumstances surrounding Ms. Gideon's termination and uphold the university's decision.

31.    The end result was that Ms. Gideon was denied a fair opportunity to defend herself, avail herself of an expert witness, or face her accuser. This absence of fairness and due process at the grievance hearing deprived Plaintiff of both her property interest in her job and a liberty interest in her good name, reputation, and integrity as a professional, in violation of the 14th Amendment to the U.S. Constitution.

## Age Discrimination

32.     Plaintiff realleges the foregoing paragraphs 14-31 and further states that, at or about the same time Auburn terminated Ms. Gideon, the Auburn College of Veterinary Medicine similarly terminated Ms. Robbi Beauchamp and Ms. Jerri Turnbough, both over the age of 50. Taken together, the terminations of Ms. Gideon, Ms. Beauchamp, and Ms. Turnbough on pretextual grounds in the space of a week and a half confirm the College of Veterinary Medicine's pattern and practice of age discrimination against highly competent—and, in the cases of Ms. Gideon and Ms. Beauchamp—senior employees.

33.     Auburn University's termination of Ms. Gideon was in significant part due to age discrimination, and said age discrimination was willful.

## Wrongful Retaliation

34.     Plaintiff Gideon avers that she was terminated in part because she interceded on behalf of a co-employee, Ms. Robbi Beauchamp. Prior to March 2021, Ms. Beauchamp had raised the issues of age discrimination in unfair compensation between younger and older employees and race discrimination involving Defendant Tajuan Sellars with the management of the College of Veterinary Medicine and the Office of Academic Affairs.

35. Ms. Gideon has lost valuable income, benefits, and professional status due to her wrongful termination and incurred a legal expense in securing an attorney to pursue this claim.

## Race Discrimination Under 42 U.S.C. § 1981

36. Dr. Tajuan Sellars played a central role in the terminations of Ms. Gideon, Ms. Beauchamp, and Ms. Turnbough. In addition to his age discrimination comments set forth in paragraphs 18-20 and 32-33 supra, the individual Defendant Sellars, as the Admissions Coordinator of Defendant Auburn University, also made numerous racially charged comments. This is reflected in the attached witness statement of Ms. Robbi Beauchamp (Exhibit B) and incorporated herein by reference into the Complaint, the same as if more fully set forth herein (see underlined portions for emphasis). Said statements were widely heard in the Office of Academic Affairs.

37. As Exhibit B reports, these comments included Mr. Sellars saying, "I don't want to be called African-American—I'm Black", objecting to a white South African-born faculty member's characterization of herself as "African-American", and objecting to the use in the office of honorifics or the word "boss" because they "are rooted in slavery." Mr. Sellars also was in the habit of saying "Don't make me go to Title IX" (i.e., submit an official discrimination complaint with the university's Title IX/AA/EEO Office) and asking, "Is it because I'm Black?" in

response to routine disagreements or perceived slights. This practice continued well into March 2021, during the same month that Plaintiff Gideon, Ms. Robbi Beauchamp, and Ms. Jerri Turnbough were fired. Efforts made by Plaintiff Gideon and other coworkers in the office to discuss with Mr. Sellars what changes could be made to improve the office environment were met with anger and accusations of racism. Because the administration of the College of Veterinary Medicine was either unable or unwilling to address these issues, this practice continued into March 2021 when the Plaintiff Gideon, Ms. Robbi Beauchamp, and Ms. Jerri Turnbough were all fired.

38.    Despite this documented and well-known pattern of statements and behavior by Mr. Sellars, Mr. Sellars was apparently not admonished or disciplined by the management of the College of Veterinary Medicine or the Office of Academic Affairs. Indeed, as reflected in paragraph 20 supra, staff members who raised concerns about Mr. Sellars' behavior with the office's management were encouraged to find ways to work with him. This reluctance on the part of the college to confront the racially-charged atmosphere in the office can be explained in large part by two developments that preceded the events of March 2021, as described in paragraphs 39-44 below.

**Two Related Developments**

39.    In June 2020, Auburn University President Jay Gogue issued a "message to the Auburn Family" in connection with the death of George Floyd the preceding month. In this message, President Gogue committed the university to "seek[ing] meaningful action to confront the pain, fear, systemic racism and injustice faced by the black community." In a subsequent message the same month, President Gogue announced the formation of "a university task force charged with identifying internal improvements to enhance minority representation and advancement." Soon thereafter, the Presidential Task Force for Opportunity and Equity announced that "[o]ur current priority is to examine racial inequality and to recommend strategies for addressing disparities." One of those strategies was and is to focus on the recruitment, hiring, promotion, and retention of African American faculty and administrators as a general university policy. All of the colleges at Auburn University, including the College of Veterinary Medicine, were and are expected to demonstrate strong support for this policy in the form of aggressive recruitment, hiring, and promotion of African American faculty and administrators.

40.    In September 2020, the College of Veterinary Medicine submitted a large research proposal to the U.S. Department of Homeland Security (DHS). This proposal totaled over $50 million and represented the largest single research

contract in Auburn University's history. The proposal involved several other colleges at Auburn and was widely discussed in a number of university venues, including the monthly meetings of the Auburn University Associate Deans for Research. By March 2021, contract negotiations between the College of Veterinary Medicine and Auburn University, and the U.S. Department of Homeland Security had reached a sensitive stage.

41.     At the Plaintiff's grievance hearing in June 2021, described in paragraphs 26-31 **supra,** Dr. Melinda Camus disclosed that she took the information provided by the unidentified office informant (on information and belief Dr. Tajuan Sellars) directly to the dean of the college, Dr. Calvin Johnson. According to Dr. Camus, Dean Johnson instructed her that her top priority should be to "protect the college."

42.     As reflected in Exhibit B, the College of Veterinary Medicine and Auburn University engaged in a pattern and practice of placating Dr. Tajuan Sellars. On information and belief, therefore, Dr. Camus interpreted Dean Johnson's instruction to mean that she should handle the situation in a manner that would further placate Mr. Sellars and prevent him from making public allegations of racial discrimination in the College of Veterinary Medicine, thereby embarrassing the college and the university and potentially derailing the

university's contract negotiations with the U.S. Department of Homeland Security for the largest single research award in Auburn University's history.

43.    Plaintiff Gideon, on information and belief, alleges that this combination of factors—the formation of the President's Task Force for Opportunity and Equity, the university's high-stakes contract negotiations with the DHS, and the college's and the university's well-founded concern that Mr. Sellars might go public with a Title IX/AA/EEO discrimination complaint—played a significant underlying and motivational role in the termination of Plaintiff's employment and thus violated 42 U.S.C. § 1981, costing Plaintiff her job for racially discriminatory reasons.

44.    As a direct and proximate result of her termination, as more fully set forth in the counts of this complaint, Ms. Gideon lost valuable income and economic benefits. Ms. Gideon was also forced to deplete her savings to meet ongoing living expenses and has had difficulty finding new employment due to her age. Further, Defendant Auburn's false allegations, created and documented by Auburn, are now part of Plaintiff's employment record, greatly marring the same. Finally, Ms. Gideon has also incurred attorney's fees to pursue this matter.

## IV. PLAINTIFF'S CAUSES OF ACTION

### COUNT I
### AGE DISCRIMINATION IN VIOLATION OF 29 U.S.C. § 621 et seq.

45.    Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 44 above, the same as if more fully set forth herein, and further avers that the Defendants Auburn University, Dr. Tajuan Sellars, and Dr. Melinda Camus discriminated against her, due to her age, by wrongfully terminating Plaintiff's employment, and that age discrimination was a substantial and motivating factor in Plaintiff Gideon's termination.

46.    The aforesaid actions of the Defendant violated 29 U.S.C. § 621 et seq., prohibiting age discrimination in employment.

47.    Plaintiff has suffered economic damage as a proximate cause of said age discrimination. The age discrimination practiced against her was willful, thus entitling Plaintiff to appropriate relief.

48.    Plaintiff further avers that she has pursued and exhausted her administrative remedies.

### PRAYER FOR RELIEF

**WHEREFORE**, premises considered, Plaintiff prays that this Honorable Court will, upon a final hearing of this cause, enter an order with the following provisions:

a) A judgment declaring that Plaintiff was discriminated against by the Defendant, due to Plaintiff's age;

b) A judgment reinstating Plaintiff into her position of employment;

c) An award of all court costs and reasonable attorney's fees, including those incurred for seeking administrative relief; and,

d) Such further, other, and different relief as this Court may deem appropriate and necessary.

## COUNT II
## RETALIATION IN VIOLATION OF Title VII (42 U.S.C. § 2000e-3(a) et seq.) 29 U.S.C. § 621 et seq.

49. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 48 above, the same as if more fully set forth herein, and further avers that the Defendant has wrongfully retaliated against Plaintiff, due to her age and race, by wrongfully terminating Plaintiff's employment, in response to Plaintiff's interceding on behalf of Ms. Robbi Beauchamp who was raising issues of age and race discrimination in the College of Veterinary Affairs of Defendant Auburn University.

50. The aforesaid actions of the Defendant violated 29 U.S.C. § 621 et seq., prohibiting wrongful retaliation, and also violated Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000e-3(a) et seq.) prohibiting wrongful retaliation.

51.   The aforesaid actions of the Defendant were taken against Plaintiff because she opposed the Defendant's age discriminatory practices made unlawful by the ADEA, and opposed Defendant's race discrimination practices made unlawful by both Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000e et. seq.) and 42 U.S.C. § 1981.

52.   The aforesaid actions of the Defendant were taken against Plaintiff because she made claims, testified, assisted, or participated in investigations, proceedings, or litigation addressing the Defendant's age and race discriminatory practices made unlawful by the ADEA, and Title VII (42 U.S.C. § 2000e et. seq.) and/or more directly addressing Defendant's race discrimination and/or age discrimination in employment.

53.   Plaintiff has suffered economic damage as a proximate cause of said wrongful retaliation and suffered great mental anguish as well.

54.   Plaintiff has pursued and exhausted her administrative remedies.

### PRAYER FOR RELIEF

**WHEREFORE**, premises considered, Plaintiff prays that this Honorable Court will, upon a final hearing of this cause, enter an order with the following provisions:

a)   A judgment declaring that Plaintiff was wrongfully retaliated against by the Defendants, in violation of federal law;

b)     A judgment reinstating Plaintiff into her position of employment;

c)     An award of all court costs and reasonable attorney's fees, including those incurred for seeking administrative relief; and,

d)     Such further, other, and different relief as this Court may deem appropriate and necessary.

**COUNT III**
**VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS**

55.    Plaintiff hereby repeats, realleges, and reaffirms the aforesaid paragraphs 1 through 54 above of this Complaint, with special emphasis on paragraphs 26 through 31, and avers that the Defendant Dr. Melinda Camus, acting in her official capacity, but with the assistance and/or encouragement of Ms. Nichole Diehl, Ms. Cathy Antee, and Ms. Robyn Westbrook, all acting on behalf of Auburn University, violated Plaintiff's procedural right to due process by failing to provide Plaintiff with either pre-deprivation or post-deprivation notice and an opportunity to be heard, each in violation of the 14th Amendment of the U.S. Constitution. As part of the same, these Defendants' 14th Amendment violations continue to take from Plaintiff her valuable liberty and property rights, including Plaintiff's fundamental liberty right to her good name, reputation, and professional integrity and the property right to the income and benefits of her job.

56.    As a proximate result of said due process denial, Plaintiff has suffered both financial out-of-pocket damages and mental anguish.

**PRAYER FOR RELIEF**

**WHEREFORE**, premises considered, Plaintiff prays that this Honorable Court will, upon a final hearing of this cause, enter an order with the following provisions:

a)   A judgment declaring that Plaintiff was denied due process of law by Defendant Dr. Camus in her official capacity;

b)   A judgment reinstating Plaintiff into her position of employment;

c)   An award of all court costs and reasonable attorney's fees, including those incurred for seeking administrative relief; and,

d)   Such further, other, and different relief as this Court may deem appropriate and necessary.

**COUNT IV**
**RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981 BY DEFENDANTS SELLARS AND CAMUS, INITIATED THROUGH 42 U.S.C. § 1983**

57.   Plaintiff hereby repeats, realleges, and reaffirms, the aforesaid paragraphs 1 through 56 above of this Complaint, with special emphasis on paragraphs 36 through 43, and further avers that both individual Defendants, in practicing race discrimination against the Plaintiff, have violated Plaintiffs right under 42 U.S.C. § 1981 to be employment-free of race discrimination and that Plaintiff has lost her job as a result thereof and also suffered mental anguish.

58.    Plaintiff brings the action through 42 U.S.C. § 1983 and alleges that Defendants Sellars and Dr. Camus, in practicing race discrimination against the Plaintiff, were acting under color of state law.

### PRAYER FOR RELIEF

**WHEREFORE**, premises considered, Plaintiff prays that this Honorable Court will, upon a final hearing of this cause, enter an order with the following provisions:

a)    A judgment declaring that Plaintiff was discriminated against by the Defendants Sellars and Camus, both acting under color of state law, due to Plaintiff's race, in violation of 42 U.S.C. § 1981;

b)    A judgment reinstating Plaintiff into her position of employment;

c)    An award of all court costs and reasonable attorney's fees, including those incurred for seeking administrative relief; and,

d)    Such further, other, and different relief as this Court may deem appropriate and necessary.

### V. JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Respectfully submitted this 14th day of April 2022.

Julian McPhillips (ASB-3744-L74J)
Counsel for Plaintiff


K. David Sawyer (ASB-5793-R61K)
Counsel for Plaintiff


**OF COUNSEL:**
**MCPHILLIPS SHINBAUM, L.L.P.**
516 South Perry Street
Montgomery, Alabama 36104
(334) 262-1911
(334) 263-2321      FAX
julianmcphillips@icloud.com
kdsawyer64@outlook.com

**PLAINTIFFS WILL SERVE EACH DEFENDANT BY PERSONAL PROCESS SERVER:**

**AUBURN UNIVERSITY**
**C/O JAIME HAMMER, ESQ.**
**101 SAMFORD HALL**
**AUBURN, AL 36849**


**TAJUAN SELLARS**
**C/O JAIME HAMMER, ESQ.**
**101 SAMFORD HALL**
**AUBURN, AL 36849**


**MELINDA CAMUS**
**C/O JAIME HAMMER, ESQ.**
**101 SAMFORD HALL**
**AUBURN, AL 36849**