IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| HEATHER GIDEON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case. No: 3:22-cv-176-RAH-SMD |
| | ) [WO] |
| AUBURN UNIVERSITY, *et al*., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

In March 2021, Plaintiff Heather Gideon, an employee in the College of Veterinary Medicine at Auburn University, was terminated for watching a confidential meeting that was showing on an exam-proctoring computer screen. Gideon claims the termination was actually because of her age and race and in retaliation for previously complaining about age discrimination in compensation. Gideon also alleges a violation of her procedural due process rights.

Pending before the Court is the Defendants' Motion to Dismiss, which has been fully briefed and is ripe for consideration. For the following reasons, it is due to be granted in part and denied in part.

**BACKGROUND**

Gideon, who was 53 years old when this lawsuit was filed on April 14, 2022, was terminated from her role as Coordinator of Student Services for the College of

1

Veterinary Medicine, Office of Academic Affairs in 2021. (Doc. 1 at 4, 6, 9.) She was initially hired for the role in September 2014. (*Id*. at 6.) While she received exemplary performance reviews and numerous promotions over the years, and even a staff recognition award, she claims to have witnessed and been subjected to a pattern of age discrimination at the college. (*Id*.) She observed younger employees being given abnormally high starting salaries and receiving permission to skip certain after-hours events. (*Id*. at 7.) On several occasions, she overheard management making what she perceived to be age-based statements, such as "older employees were unwilling to change and needed to go" and "younger people were more in tune with what needed to be done, while older people were set in their ways." (*Id*.) As to her, she claims that younger employees would ignore and not communicate with her and would treat her and the other older employees with contempt. (*Id*. at 8.) Management took no corrective action after Gideon and other older employees complained. (*Id*.)

On March 4, 2021, Gideon stopped by the office desk of co-employee Jerri Turnbough to let her know that Gideon had finished a meeting and could resume video-proctoring any students who were taking exams. (*Id*. at 8.) Instead of showing students who were taking an exam, Turnbough's screen actually showed a confidential meeting. (*Id*.)

The following day, March 5, 2021, Dr. Melinda Camus placed Gideon on administrative leave on the stated basis that Gideon had watched a confidential meeting on Turnbough's computer in the public office area. (*Id*. at 9.) Gideon was terminated for the video incident twelve days later, on March 17, 2021. (*Id*.)

Gideon contested her termination. During a grievance hearing, it was disclosed to Gideon that Gideon's termination was based on statements provided by an unidentified witness. (*Id*. at 10.) Gideon believed this witness to be Dr. Tajuan Sellars, a person who previously had made age-based comments about the older employees in the college and who had no first-hand knowledge about the video incident. (*Id*. at 7, 10.) The grievance committee upheld the termination.

Gideon then filed this lawsuit against Auburn University, Dr. Tajuan Sellars, and Dr. Melinda Camus.

## LEGAL STANDARD

A motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure tests the sufficiency of a complaint against the legal standard articulated by Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A district court accepts a plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes them "in the light most favorable to the plaintiff," *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations." *Id*. Instead, it must contain "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Still, the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555. A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

In their motion to dismiss, the Defendants attack only three of Gideon's four claims. The Court will address those in turn. Upon consideration of the arguments presented in the motion, the Court finds that Counts One and Three are due to proceed against Camus in her official capacity only. Counts Two and Four are due to be dismissed without prejudice, and Auburn University and Sellars are due to be dismissed as defendants.

### Count One - Violation of the ADEA

In Count One, Gideon claims that the Defendants discriminated against her because of her age when she was terminated. This claim is brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (ADEA) against Auburn, as well as Sellars and Camus in their individual and official capacities, and seeks reinstatement and costs. All three defendants move to dismiss the claim, asserting their entitlement to sovereign immunity under the Eleventh Amendment. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 67 (2000) (concluding that Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under the ADEA).

In her response, Gideon acknowledges that Auburn is entitled to sovereign immunity, including for the injunctive relief sought in the ADEA claim. She also acknowledges that state officials (presumably referring to Sellars and Camus) are entitled to sovereign immunity for official capacity claims seeking monetary damages. She does not address, however, whether Sellars and Camus are entitled to sovereign immunity for the claims asserted against them in their individual capacities.

Instead, citing the *Ex parte Young* exception, Gideon solely argues that she can pursue her ADEA claim for prospective and injunctive relief—that is, reinstatement—against Camus in her official capacity. As such, the Court will

5

confine its analysis to that issue, deeming all other claims in Count One as either conceded or abandoned. The Court concludes that Gideon's ADEA claims against Camus in her official capacity for prospective and injunctive relief are not barred by sovereign immunity. Therefore, her motion to dismiss Count One is due to be denied.

Under *Ex parte Young*, the Supreme Court held that private individuals can sue state officers for injunctive relief despite sovereign immunity because "individuals, who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." 209 U.S. 123, 155–56 (1908). The Eleventh Circuit has accordingly held: "[The *Ex parte Young*] doctrine provides an exception to Eleventh Amendment immunity for lawsuits against state officials as long as the plaintiffs seek only *prospective injunctive relief to stop ongoing violations of federal law*." *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1215 (11th Cir. 2009) (emphasis added) (citing *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000)); *see also Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999) ("[T]he Eleventh Amendment bars suits against state officials in federal

court seeking retrospective or compensatory relief, but does not generally prohibit suits seeking only prospective injunctive or declaratory relief.") (citation omitted).

Camus argues that the *Ex parte Young* exception does not apply to ADEA claims and this Court should not follow the nonbinding cases that have concluded that it does. This argument misconstrues the applicability of the *Ex Parte Young* doctrine to federal statutory frameworks. The *Ex parte Young* exception has been extended to other federal statutory causes of action, including those under Title I of the Americans with Disabilities Act of 1990. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 n.9 (2001). As it concerns ADEA claims, the Supreme Court has not spoken directly to the issue. The Eleventh Circuit has addressed the matter in an unpublished opinion, reasoning that the *Ex parte Young* exception covers injunctive relief claims arising under the ADEA. *See Cooper v. Ga. Dep't of Transp.*, 837 F. App'x 657, 669 (11th Cir. 2020) (permitting a cause of action seeking reinstatement following an alleged violation of the ADEA to proceed against state officials in their official capacity, as reinstatement is the sort of prospective injunctive relief that is not barred under the Eleventh Amendment).

Other circuit courts and several Alabama district courts have addressed the issue as well. All have either strongly suggested or concluded that the *Ex parte Young* exception indeed extends to claims arising under ADEA. *See, e.g.*, *State Police for Automatic Ret. Ass'n v. DiFava*, 317 F.3d 6, 12 (1st Cir. 2003) ("*Kimel*

involved a private action for monetary damages [under the ADEA]. Neither *Kimel*, nor Eleventh Amendment jurisprudence, prevents individuals . . . from obtaining injunctive relief against a state based upon the ADEA pursuant to *Ex parte Young*. . . ."); *McGarry v. Univ. of Miss. Med. Ctr.*, 355 F. App'x 853, 856 (5th Cir. 2009) (suggesting that a suit seeking prospective injunctive relief against a state entity for violations of the ADEA is permissible under *Ex parte Young*); *Meekison v. Voinovich*, 67 F. App'x 900, 901 (6th Cir. 2003) ("[P]rivate individuals may sue for injunctive relief to enforce the standards of … the ADEA." (citing *DiFava*, 317 F.3d at 12)); *Jurriaans v. Ala. Coop. Extension Sys.*, No. 3:17-CV-124-MHT, 2018 WL 3631892, at *1 (M.D. Ala. July 31, 2018); *Key v. Morgan Cnty. Sheriff's Office,* No. 5:12-CV-0314-NE, 2012 WL 1340099, at *5 (N.D. Ala. Apr. 12, 2012); *Moore v. Ala. Dep't of Hum. Res.,* No. 2:09-CV-1167-RDP, 2010 WL 11565274, at *6 (N.D. Ala. Feb. 16, 2010) ("[T]he court concludes that a private plaintiff may pursue prospective injunctive relief against a state officer pursuant to *Ex parte Young* and in order to vindicate rights provided under the ADEA.").[1] The Defendants have

---

[1] Defendants claim that *DiFava*, *Moore*, and *Key* were erroneously decided in part because they relied on the Supreme Court's holding that the *ADA* did not waive state sovereign immunity for monetary damages, but that actions for injunctive relief under the *Ex parte Young* exception seeking enforcement of the ADA may proceed against state governments. *See Garrett*, 531 U.S. at 374 n.9. Aside from asserting that this claim is dicta, Defendants also appear to assert that a different statutory framework requires a distinct analysis for *Ex parte Young* purposes. Despite their criticisms of this argument, Defendants point to no statutory or jurisprudential rationales for distinguishing the availability of prospective injunctive relief to seek enforcement of the ADA as compared to the ADEA. Furthermore, Defendants do not engage with the fact that the Supreme Court only addressed claims for monetary damages in finding that the ADEA had not waived the

pointed to nothing unique about the ADEA that prevents Gideon from seeking prospective injunctive relief from state officials through the *Ex parte Young* exception to sovereign immunity, even though she cannot seek monetary damages from the same officials. Nor have Defendants pointed to any case law suggesting that the *Ex parte Young* exception does not apply in the ADEA context. This Court agrees with the analysis supplied by the above-cited courts.

The Court also finds that reinstatement is a form of prospective injunctive relief which may be sought against Camus in her official capacity under the *Ex parte Young* exception. The Eleventh Circuit has held that "requests for reinstatement constitute prospective injunctive relief that fall within the scope of the *Ex parte Young* exception and, thus, are not barred by the Eleventh Amendment." *Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014).

---

sovereign immunity of the states. *See Kimel*, 528 U.S. at 66. There is little to suggest that the Supreme Court envisioned that the *Ex parte Young* exception would be inapplicable in the ADEA context, even if Congress otherwise failed to abrogate state sovereign immunity in drafting the statute.

*Ex parte Young* is a broad exception to a grant of sovereign immunity conferred on the states by the Eleventh Amendment. *See Pryor*, 180 F.3d at 1336. At the end of the day, there is no dispute that the states are immune from suit under the ADEA and the Eleventh Amendment. The question is whether the wide-reaching *Ex parte Young* exception to sovereign immunity (which is presumed under the Eleventh Amendment, after all) permits private individuals to seek prospective injunctive relief for alleged violations of the act. The Court is unpersuaded by Defendants' arguments and, finding no reason to dispute the applicability of the *Ex parte Young* exception to this matter, will permit this cause of action to proceed.

Defendants do not dispute that this form of relief is available under *Ex parte Young*.[2] Accordingly, Gideon's ADEA claim seeking reinstatement against Camus in her official capacity may proceed as a matter of law.

### Count Two –Title VII, § 1981, and ADEA Retaliation

In Count Two, Gideon claims the Defendants terminated her in retaliation for "interceding on behalf of Ms. Robbi Beauchamp who was raising issues of age and race discrimination in the College of Veterinary Affairs of Defendant Auburn University" in violation of the ADEA, Title VII, and 42 U.S.C. § 1981. (Doc. 1 at 20–21.) The Defendants move to dismiss this claim, alleging several bases — there is no evidence that Gideon properly exhausted her Title VII claim with the EEOC, the application of Eleventh Amendment immunity to the ADEA retaliation claim, and the failure to sufficiently plead facts supporting retaliation for engaging in protected conduct.

---

[2] Furthermore, contrary to Defendants' assertions, Gideon may bring her ADEA claim for prospective injunctive relief against Camus in her official capacity. Defendants are correct that Camus was not herself Gideon's employer for ADEA purposes, and individuals cannot be held liable under the ADEA. *See Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007). However, when Camus is sued in her official capacity, she instead represents the employer, Auburn University. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)) ("Official-capacity suits … 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"); *Cooper*, 837 F. App'x at 669 (finding that plaintiff's ADEA claims seeking prospective equitable relief are not barred by sovereign immunity against two officials in their official capacity, even when barred against them in their individual capacity and the institution itself).

Gideon does little to defend this count other than quoting her Complaint and relying upon her arguments that she made in response to the Defendants' request to dismiss Count One.  Gideon then concludes by stating that the ADEA retaliation claim, like with Count One, should proceed against Dr. Camus in her official capacity.

Retaliation against an employee who engages in statutorily protected activity is prohibited under ADEA, Title VII, and § 1981. *See* 42 U.S.C. § 2000e–3(a); *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (concluding that § 1981 encompasses retaliation claims); *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257–58 (11th Cir. 2012); *Stone v. Geico Gen. Ins. Co.*, 279 F. App'x 821, 822 (11th Cir. 2008).  Claims for retaliation under each of these statutes, as in substantive discrimination cases, proceed under the same prima facie framework. *Chapter 7 Tr.*, 683 F.3d at 1258; *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174, n.6 (11th Cir. 2010); *Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009); *Stone*, 279 F. App'x at 822.  A plaintiff demonstrates a prima facie case of retaliation by showing that (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).  Once the plaintiff meets this burden, the employer has an opportunity to articulate a legitimate non-retaliatory reason for

11

its employment action, which the plaintiff can rebut with evidence of pretext. *Bryant*, 575 F.3d at 1308.

From a pure factual pleading basis, Count Two utterly fails to state a claim for retaliation. Gideon provides no facts or substance to the vague and conclusory assertion that she engaged in protected conduct by interceding on behalf of another employee. No protected conduct nor causation between alleged retaliation and an alleged adverse employment action are discernable in this Complaint. Gideon's pleadings here fall woefully short of the pleading standards required under *Twombly/Iqbal* and fail to place the Defendants on notice of the claims against them. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Count Two of Gideon's Complaint is due to be dismissed.

## Count Four – §§ 1981 & 1983

In Count Four, Gideon alleges that Sellars and Camus racially discriminated against her in terminating her employment with Auburn, in violation of 42 U.S.C. § 1981. Her only other factual assertions under this claim are that Sellars made statements referring to his own race and how he preferred to be referenced and that the college placated Sellars so as to discourage him from making public accusations of discrimination about the college. And as to Camus, Gideon alleges virtually nothing from a discrimination standpoint, other than referencing Camus's action in terminating Gideon. As the Court understands the claim, Gideon does not contest

that she viewed a confidential meeting on a remote video link; instead, she says that her subsequent termination based on that stated reason was actually based on her race and not the fact that she actually watched the video. Sellars and Camus move to dismiss this claim, arguing that it is conclusory and conjectural and therefore violative of *Twombly/Iqbal*, and that the referenced statements by Sellars do not plausibly support a claim of a race-based termination rather than for some other reason such as the video issue.

To establish a *prima facie* case of race-based treatment, a plaintiff generally must show that: (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) the employer treated similarly-situated employees outside her protected class more favorably, and (4) she was qualified to perform the duties of her job. *Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1228 (11th Cir. 2002); *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001). "In cases involving alleged racial discrimination in the application of work rules to discipline an employee, the plaintiff must show either" (a) no violation of the work rule, or (b) the misconduct was similar to that of another employee outside the protected class, and she suffered disciplinary measures more severe than those enforced against the other persons outside the protected class who engaged in similar misconduct. *Moore v. Ala. Dep't of Corr.*, 137 F. App'x 235, 238 (11th Cir. 2005) (citing *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1998)). A plaintiff can

overcome the lack of a similarly situated comparator where other indicia of an employer's discriminatory intent exist.  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1327–28 (11th Cir. 2011).

"Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas prima facie* case, it must provide 'enough factual matter (taken as true) to suggest' intentional race discrimination."  *Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (internal citations omitted). "In addition to containing well-pleaded factual allegations, complaints must also meet the 'plausibility standard' set forth in *Twombly* and *Iqbal*."  *Bowers v. Bd. of Regents of Univ. Sys. of Ga.*, 509 F. App'x 906, 910 (11th Cir. 2013).

Here, the Complaint is woefully deficient.  It does not identify Gideon's protected class, and it does not allege that Sellars and Camus are outside her protected class.  It also does not allege any comparators, or anyone of a different race that replaced Gideon or were treated differently for the same or similar conduct. The Complaint offers nothing more than the conclusory statement that Gideon was discriminated against based on her race. And when it comes to Camus, the Complaint provides no factual allegations of discrimination based on race at all, other than that Camus relied on information (which Gideon does not dispute) provided by Sellars.  Although the failure to adequately identify a similarly situated comparator is not fatal at the motion to dismiss stage, *see Davis*, 516 F.3d at 974,

the Complaint is devoid of facts to even infer intentional discrimination based on Gideon's race or national origin. Because Gideon's Complaint is completely devoid of factual assertions that the Court can construe in her favor to suggest intentional discrimination on the part of Sellars and Camus, especially in the absence of any contest by Gideon that she did exactly what she was accused of doing, Gideon's claims of race discrimination are due to be dismissed.

## CONCLUSION

Accordingly, it is ORDERED as follows:

(1) The Defendants' Motion to Dismiss (Doc. 17) is GRANTED in part and DENIED in part;

(2) Count One shall proceed against Dr. Melinda Camus in her official capacity for prospective injunctive relief. In all other respects, Count One is dismissed;

(3) Counts Two and Four are dismissed without prejudice;

(4) As the Defendants did not move to dismiss Count Three, Count Three will proceed as pleaded;

(5) Defendants Auburn University and Tajuan Sellars are dismissed as parties.

**DONE** on this the 28th day of November, 2022.

                                                    /s/R. Austin Huffaker, Jr.
                                          R. AUSTIN HUFFAKER, JR.
                                          UNITED STATES DISTRICT JUDGE