IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

HEATHER GIDEON,              )
                                            )
      Plaintiff,            )
                                            )
v.                             )   Case. No: 3:22-cv-176-RAH-SMD
                                          )              [WO]
MELINDA CAMUS,           )
                                            )
      Defendant.         )

## MEMORANDUM OPINION AND ORDER

This is an employment matter.  Pending before the Court is the Defendant's *Motion for Summary Judgment.*  (Doc. 48.)  The Motion is fully briefed and thus ripe for decision.  For the reasons set forth more fully below, the motion is due to be GRANTED.[1]

## FACTS

Heather Gideon worked at the College of Veterinary Medicine (CVM) at Auburn University as a Coordinator of Student Services (CSS) until her termination on March 17, 2021.  As a CSS, Gideon's job responsibilities included proctoring student exams.  Jerri Turnbough, an administrative assistant, sometimes assisted Gideon with this task.  Gideon and Turnbough could remotely proctor exams on their computers using a live video stream set up from the exam rooms.

On the afternoon of March 4, 2021, Robbi Beauchamp, a Scholarship Advisor at the CVM and Gideon's personal friend, met with Melinda Camus, the CVM's Associate Dean for Academic Affairs, and Nichole Diehl, a CVM Human Resources

---

[1] Gideon concedes dismissal of Count One for age discrimination.  Accordingly, only Count Three for a procedural due process violation will be addressed.

Manager, in one of the exam rooms that could be remotely viewed.  The meeting was of a sensitive nature, as it involved Beauchamp's possible termination.

According to Gideon, the same afternoon that Beauchamp was meeting with Camus and Diehl, Gideon visited Turnbough's desk to take over video proctoring[2] and noticed that Turnbough's computer was streaming the Beauchamp meeting.[3] Gideon acknowledges that she was aware that this video was not of a student taking an exam and that she recognized Beauchamp and Camus, although not Diehl, from the video.  Gideon proceeded to "look more closely" but not "watch" the video for "10 to 20 seconds" because she wondered if Beauchamp, her friend and colleague, was "okay."  (Doc. 49-1 at 24.)[4]  Gideon could see what was happening through the livestream, although she was unable to hear anything.

Unbeknownst to Gideon, Tajuan Sellars, a co-worker, witnessed Gideon and Turnbough viewing the meeting.  Sellars then notified Camus via text that her meeting was being watched.

The following day, March 5, 2021, Camus and Diehl met with Gideon to discuss whether Gideon had watched the Beauchamp meeting.  Although this meeting initially began with the purpose of fact-finding, that changed when Gideon admitted to "looking" at the video out of concern for Beauchamp.  Based on her admissions, Gideon was told that she had potentially committed a serious offense and that the meeting was now a pre-termination meeting—meaning that she could be terminated.  Gideon was also told that she could email Camus or Diehl any

---

[2] Although the evidence indicates that when Gideon approached Turnbough's computer there was no longer a student testing, it is unclear if Gideon—having just finished a meeting—was aware of this.

[3] It is not clear if Gideon knew that this was a pre-termination meeting, but she indicated that, based off events that had transpired earlier that week, she had reason to be concerned for Beauchamp.  (Doc. 49-1 at 24.)

[4] For the sake of clarity, documents will be referred to by their page numbers based on their CM/ECF document page numbers.

additional statements she wanted to make.  She was then put on paid administrative leave.

On March 7, 2021, Gideon sent a follow-up email to Camus and Diehl that, according to her, sought to clarify a number of points from their earlier meeting. (Doc. 51-2 at 2–3.)  She did not receive a response to her email.

Approximately twelve days later, Gideon was terminated.  Camus's termination letter, (doc. 51-3), to Gideon stated that, at the meeting on March 5, 2021, Gideon had admitted seeing the Beauchamp meeting and that she had done so out of concern for Beauchamp.  It also stated that Camus had determined that Gideon's actions constituted a Group I violation of Auburn University's Policies and Procedures because her actions imposed on the rights and privileges of other employees and were highly unprofessional and unbecoming of her position.  Lastly, the memo notified Gideon that she could appeal the termination decision through Auburn's grievance process.

Gideon ultimately challenged her termination through Auburn's grievance process.  A three-person panel was empaneled, and a grievance hearing conducted. Gideon's termination was upheld by the panel.

## STANDARD OF REVIEW

Summary judgment is appropriate where the materials in the record show there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a), (c).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion[.]"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its responsibility, the moving party must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* (citation and internal quotation marks omitted).

To prevent summary judgment, a factual dispute must be both material and genuine. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is "material" if it has the potential of "affect[ing] the outcome" of the case. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (quoting *Liberty Lobby*, 477 U.S. at 248). And to raise a "genuine" dispute of material fact sufficient to preclude summary judgment, "the nonmoving party must point to enough evidence that 'a reasonable juror could return a verdict'" in his favor. *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation omitted). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position" is insufficient to defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 252.

## DISCUSSION

Gideon argues that Camus violated her procedural due process rights when Camus terminated Gideon's employment with the CVM without affording her an adequate pre-termination hearing. (Doc. 51 at 12–13.) Camus disputes this assertion, stating that Gideon received a constitutionally adequate pre-termination hearing and that, moreover, even if Gideon did not receive an adequate pre-termination hearing, any procedural deprivation was cured when Gideon received adequate post-termination process.

"In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). *See also Zipperer v. City of Fort Myers*, 41 F.3d 619, 623 (11th Cir. 1995) ("[T]o determine if a procedural due process violation occurred . . ., we must resolve: (1) whether [plaintiff] had a constitutionally protected property interest; (2) whether he was deprived of that interest; and (3) if he was deprived of a constitutionally protected

4

interest, whether the [defendants] failed to use constitutionally sufficient procedures before that deprivation occurred." (citations omitted)).

The parties do not dispute the first or second elements of Gideon's procedural due process claim, but they do disagree about the third element. As such, the issue here is whether Gideon was afforded constitutionally sufficient process before her employment was terminated.

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted). Indeed, the Supreme Court has "described the root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Id.* (citation and internal quotation marks omitted) (emphasis in original). In the public employment context, the "principle requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.* (citation and internal quotation marks omitted). *See also Reeves v. Thigpen*, 879 F. Supp. 1153, 1171 (M.D. Ala. 1995) ("In *Loudermill*, the Supreme Court made it clear that some form of pre-termination hearing is required before a public employee can be discharged, and consequently, deprived of his or her property interest in continued employment.").

The pre-termination hearing, though necessary, need not be elaborate. "[T]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Loudermill*, 470 U.S. at 545 (citation and internal quotation marks omitted). "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Id.* (citation omitted). Moreover, "the pretermination hearing need not definitively resolve the propriety of the discharge. It should be an

initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46.

Accordingly, under *Loudermill*, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546. *See also Reeves*, 879 F. Supp. at 1171 ("Following the clear dictates of the *Loudermill* decision, . . . 'it is clear that oral notice and an opportunity to respond orally is sufficient in the pretermination context.'" (quoting *Kelly v. Smith*, 764 F.2d 1412, 1414 (11th Cir. 1985))). Moreover, "[t]he opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Loudermill*, 470 U.S. at 546.

If a public employee receives *no* pre-termination hearing, then a due process violation is "complete" upon her termination—meaning that no post-deprivation remedy can cure the violation. *See Enter. Fire Fighter's Ass'n v. Watson*, 869 F. Supp. 1532, 1541 (M.D. Ala. 1994) ("[W]hen the violation of due process is the failure to provide a pretermination hearing, the violation cannot be cured subsequent to termination."). But if an *inadequate* pre-termination hearing was offered, a due process violation is not "complete" if a post-termination remedy can cure the deprivation. *See McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994) ("When a state procedure is *inadequate*, no procedural due process right has been violated unless and until the state fails to remedy that inadequacy." (emphasis added)). *See also Galbreath v. Hale Cnty., Ala. Comm'n*, 754 F. App'x 820, 828 (11th Cir. 2018) ("Properly understood, *McKinney*'s holding that a state 'may cure a procedural deprivation by providing a later procedural remedy' is true only where post-deprivation procedures satisfy due process. But where a due process violation is

already complete because no hearing was held as required by *Loudermill*, *McKinney* has no application." (citation omitted)).

Gideon argues that her pre-termination hearing was inadequate[5] because before her termination on March 17, 2021, "she was merely asked one simple question: whether she had seen the monitoring video on Ms. Jerri Turnbough's screen." (Doc. 51 at 15.) This, she posits, fails *Loudermill*'s pre-deprivation requirements because it does not constitute 1) oral or written notice of the charges against her, 2) an explanation of the employer's evidence, and 3) an opportunity to present her side of the story. (*Id.*) Below, the Court discusses each prong of *Loudermill*'s test to determine whether Gideon received an adequate pre-termination hearing, and then addresses Gideon's additional claim that Camus's failure to follow Auburn University's termination policies further violated Gideon's procedural due process rights.[6]

## A. Pre-Termination Process

### 1. Notice of Charges and Evidence

Diehl's meeting notes and Gideon's own deposition testimony show that (1) during the meeting on March 5, 2021, Gideon was asked whether she watched the Beauchamp meeting the day before, (2) Gideon confirmed that she had looked at it, and (3) Gideon acknowledged that she did so because she was concerned about Beauchamp. Gideon also confirmed in her deposition testimony that Diehl told her that "this is a serious matter," that Gideon was told that the meeting had turned into

---

[5] Confusingly, and as the Defendant points out, (doc. 52 at 9–10), Gideon cites to law applicable when a public employee receives *no* pre-termination hearing—seemingly to suggest that an *inadequate* pre-termination hearing constitutes a "completed" procedural due process violation, (*see* doc. 51 at 12). But Gideon received a pre-termination hearing, so her legal citations have little relevance. Moreover, that Gideon received a constitutionally sufficient pre-termination hearing resolves any assertion Gideon makes that she received *no* pre-termination hearing.

[6] Because Gideon received adequate pre-termination process, the Court does not consider the adequacy of the post-termination process she received.

a pre-termination meeting, that Gideon was asked if there was anything else she wanted to communicate about the events,[7] and that Gideon could email Camus or Diehl if there was any additional information that she wanted them to consider. (Doc. 49-2 at 13.)  There is also no dispute that Gideon did in fact submit additional information via email to Camus and Diehl in which she further addressed the issue. (*See* doc. 51-2 at 2–3.)

These facts show sufficient notice: Gideon was told that the meeting concerned her actions in viewing a confidential personnel meeting; she was allowed to explain what happened; she was informed that the alleged offense was a serious one; and she was notified that she could email more information in her own defense, which she did.

Gideon also appears to suggest that her due process rights were violated because she was not informed of the specific Auburn University rule or policy that she was accused of having violated.  (*See* doc. 51 at 8, 13–14.)  But Gideon never develops this argument and cites no case law supporting this proposition.  *Bookman v. Comm'r of Soc. Sec.*, 490 F. App'x 314, 317 n.2 (11th Cir. 2012) (per curiam) ("[T]he failure to make arguments and cite authorities in support of an issue waives it." (citation omitted)). And this argument would not be persuasive even if Gideon had sufficiently developed it: she was notified of (and admitted to) the accusation against her, was told her behavior constituted a serious offense, was "responsibl[e] . . . [for] know[ing] University and departmental rules and regulations," (*see* doc. 49-3 at 57; doc. 51-1 at 5), and was informed that her meeting had turned into a pre-termination meeting.

Gideon also argues that she was unaware of the evidence against her.  But this argument misses the mark because, as Camus points out, it was Gideon's own

---

[7] To which she responded that, while she could see the video footage, she had been unable to *hear* what had occurred in the meeting.  (Doc. 49-3 at 80–81.)

statements acknowledging the accusation against her that turned what was originally a fact-finding meeting into a pre-termination meeting.  In other words, the evidence used to terminate Gideon was Gideon's own admissions to Camus and Diehl during their meeting, and it is irrelevant that Gideon was not told that it was Tajuan Sellars who had initially reported Gideon to Camus: Gideon was terminated due to her admission, not on the basis of Sellars' accusation.  *See Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989) (noting that "because [the plaintiff] admitted to the allegations, the basis for [the] questions [preceding the admission] became irrelevant.").  Accordingly, Gideon had notice of the evidence against her.

## 2. Opportunity to Respond

Gideon also argues that at no time during her pre-termination meeting did anyone provide her an opportunity to present her side of the story, or to present evidence contesting the accusation.  Once again, her own deposition testimony contradicts these assertions.

Gideon confirmed in her deposition that she told Camus and Diehl during the meeting that she did not "watch" the video although she did "see" it for 10 to 20 seconds.  (Doc. 49-1 at 24.)  And Gideon further stated that there is a difference between seeing a video and watching one. She also confirmed that she was asked during the meeting whether she had anything else to say and that she later sent Camus an email that provided clarifications from the meeting.  Given this testimony, Gideon had ample opportunity both orally and via email to respond and explain her position.  Accordingly, the third element under *Loudermill* has been met.

## B. Violation of Auburn University Termination Policies

Gideon argues that Camus deviated from Auburn University policy in failing to conduct a review of the circumstances surrounding the misconduct and then meet with Gideon to allow Gideon an opportunity to defend herself before her termination.  Even assuming this to be true, "noncompliance with personnel policies

is not a per se denial of procedural due process." *Dejarnett v. Willis*, 976 F. Supp. 2d 1271, 1295 (M.D. Ala. 2013) (quoting *Black v. City of Auburn*, 857 F. Supp. 1540, 1547 (M.D. Ala. 1994)).  The issue is whether the steps Camus took in terminating Gideon's employment were sufficient to satisfy the Constitution's procedural due process requirements, not whether those steps adhered to Auburn University policy. *See Cochran v. Collins*, 253 F. Supp. 2d 1295, 1304 n.1 (N.D. Ga. 2003) ("The Plaintiff's procedural due process rights are determined by federal law.  Thus, even if the defendants failed to comply with all of the handbook provisions, that failure is in itself insufficient to establish a violation of procedural due process." (citation omitted)).  Given that the pre-deprivation process Gideon *did* receive satisfied *Loudermill*, "any . . . noncompliance [with Auburn policy] did not prejudice [Gideon] to the point that she was deprived of her procedural due process rights[.]" *Dejarnett*, 976 F. Supp. 2d at 1295.

## CONCLUSION

Gideon received all the process that she was due under the Constitution prior to her termination because she was aware of the charge and evidence against her and because she received an opportunity to respond.

Accordingly, it is **ORDERED** as follows:

1. Defendant's *Motion for Summary Judgment* (Doc. 48) as to Count Three is **GRANTED**.  Count One is dismissed by concession of the Plaintiff.

2. As there are no further claims, a separate judgment will issue.

**DONE** this the 19th day of April, 2024.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE